IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>V.<br><br>NELSON ONARO, D.O.,<br><br>DEFENDANT. | CR20-089-RAW<br>JUDGE WHITE |

## DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

**COMES NOW,** Defendant, by and through his counsel of record, hereby moves for the Court to grant a downward variance from the advisory guidelines.

## DEGREE OF RELIEF REQUESTED

The Presentence Investigation Report ("PSR") correctly calculates Defendant Onaro's advisory sentencing guidelines range at 30 to 37 months of imprisonment with his overall offense level at nineteen (19). For the reasons set forth below, Defendant Onaro requests a downward variance to a sentencing guidelines range of zero months.

## GENERAL SENTENCING LAW

The sentencing judge "shall impose a sentence sufficient, but not greater than necessary," to accomplish the purposes of sentencing. 18 U.S.C. § 3553(a). Those purposes include the need for the sentence imposed:

i.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

ii. to afford adequate deterrence to criminal conduct;

1

    iii.    to protect the public from further crimes of the defendant; and

    iv.    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.*

In determining the specific sentence to be imposed, the sentencing judge must consider:

    i.    the nature and circumstances of the offense and the history and characteristics of the defendant;

    ii.    the need for the sentence imposed to accomplish the purposes of sentencing;

    iii.    the kinds of sentences available;

    iv.    the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;

## DISCUSSION OF FACTORS AND ARGUMENTS IN SUPPORT OF REQUESTED RELIEF

**I. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.**

Defendant Onaro is a Doctor of Osteopathic Medicine. He is seventy (70) years old, and he is a naturalized American citizen. This court may never come across another Defendant who, based on every conceivable factor, deserves less to be incarcerated than Defendant Onaro.

Onaro spent the first sixty-nine (69) years of his life never having committed a crime – felony or misdemeanor. Perhaps even more compelling, at the time of his indictment, Dr. Onaro had never once been sued for medical malpractice. It was not until October 2017 when President Trump directed the Department of Health and Human Services (HHS) to declare the opioid crisis a public health emergency that caused Onaro to break the law. As part of Trump's initiative, rural doctors became under heavy scrutiny for their otherwise, heretofore uncontested medical practices. When rural residents came to see their provider because they were in pain, the rural doctors prescribed

the available remedies to ease the pain. As part of their training over the last thirty years, rural doctors were propagandized into believing opioid-derivative pills could relieve chronic pain with little to no consequences. Such is the nature of the *Big Pharma* machine.

As with any policy enactment, Trump's broad mission was thought to be good for the country – that is, attempting to quell the tragedy of opioid abuse, particularly in rural areas. However, in the instant case, as with a lot of law enforcement, the Department of Justice ("DOJ") became a *hammer,* and any unsophisticated rural doctor became the *nail*. Onaro was that nail.

Defendant Onaro was accused of, literally, doing his job below the standard of care – that is, prescribing medicine outside the course of usual business and without a legitimate medical purpose. What that means practically is Onaro prescribed controlled substances outside the range of the Department of Justice's expert. Aside from the obvious constitutional implications of that criminal statute (applying a negligence standard to convict a Defendant beyond a reasonable doubt), which is left for another argument, it is important to note what the DOJ **did not** accuse Onaro of: it did not accuse Onaro of profiting off of some sort of *pain mill*; it did not accuse Onaro of causing any known death by inappropriate prescribing; it did not even accuse Onaro of creating any known addicts through is prescribing. It accused Onaro of prescribing pain medicine wrongfully (but not maliciously) to individuals who claimed they were in pain.

In America, prescribing pain-medicine is a crime when the Federal government wants it to be – even in the smallest cases. The DOJ hired, *inter alia*, a coastal-based doctor to review medical records of rural doctors to see if their practices are in accordance with his medical opinion. When it is not, regardless of having any known motive or stated damage, the federal government can and does indict you. Because of some DOJ-hired expert disagreeing with the Onaro's medical practice,

Defendant Onaro is now a felon and unable practice medicine for the rest of life. He does not need any more punishment.

**II. THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE.**

    **I. SERIOUSNESS OF THE OFFENSE.**

Doctors who overprescribe highly addictive drugs to patients for ulterior motives should be punished in American society. Not many would disagree with that statement. But that is not what the statute holds. It holds that then when a doctor, even with the purest intention, prescribes a controlled a substance – something he was trained to do – outside the usual course of professional practice and without a legitimate medical purpose, he can be found in violation of the subject statute – 21 U.S.C. § 841, regardless of damage. This brief is not going to the address the danger of such statute other than state the following: Defendant Onaro plead to a Felony **because another doctor accused him of Negligence**. If Defendant Onaro had instead been, hypothetically, sued by some regulatory board for malpractice, he would have likely won on summary judgement because **there are no known damages associated with the Defendant**. He did not profit from illicit overprescribing, he did not kill a patient, and he created no addicts. He violated an arbitrary expert's opinion.

    **II. RESPECT FOR THE LAW.**

Dr. Onaro already respected American law as he had never broken it in the first sixty-nine (69) years of life. He still respects the rule of law, which is one the reasons he elected to plea rather than try the case on the merits of the unfair law. Moreover, he plead guilty approximately one year ago and he caused no problems in society. He is demonstrably a forever law-abiding citizen.

More importantly, however, is that Dr. Onaro has been punished enough. Incarceration is not going to *teach him a lesson.* Incarceration is certainly not "just punishment" for prescribing

medicine outside the course of another expert's opinion, particularly when there is no damage to be punished for. The Defendant already relinquished his medical license. He agreed to never seek reinstatement of his medical license for the rest of life. He is now a convicted felon and will never practice medicine again. He is unable to provide a living for his family as he has no other skills, and he is too old to learn a new career. He can, at the court's discretion, lose all his federal benefits he has paid for.  Incarceration is not appropriate for the Defendant. It would be cruel and an abuse of the state's power.

**III. TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT.**

As the Department of Justice concurred with Defendant's counsel, the deterrence of Onaro prescribing controlled substance by way of regulatory licensure is forever accomplished. Dr. Onaro cannot legally check a heartbeat ever again, let alone write a prescription. His license(s) are relinquished and forever barred. The public is protected forever against Onaro's alleged medical practices.

**IV. THE KINDS OF SENTENCING AVAILABLE.**

The sentencing available to Onaro based on 21 U.S.C. § 841 for all six (6) counts is zero to twenty years. While Onaro's guidelines range from 30-37 months, any amount of incarceration would be draconian on Onaro for the aforementioned. The Defendant should be sentenced to zero (0) days incarcerated. While this may seem like a bold request at first, it is not. The DOJ, since the inception of the original indictment, has stated that Onaro will always be able to argue for zero days incarcerated agreeing to express provisions in the plea agreement allowing variance at the discretion of this court – something not usually done in the Eastern District of Oklahoma. The probation office further agrees with the plea agreement. This contextual fact speaks volumes to the

government's sole intent – that is, remove the Defendant's ability to prescribe further. That has been accomplished.

The Court may, but is not required to, impose a fine. The maximum fine of each county is $1,000,000.00. 18 U.S.C. § 3571(a) and 21 U.S.C. § 841(b)(1)(B)(viii). While Defendant Onaro is prepared to accept the Court's judgment as to the amount of any fine that should be imposed, he requests that the Court consider, pursuant to 18 U.S.C. §§ 3572(a)(1) and (2), his lack of income and financial resources and the burden the fine would impose upon him. The PSR concluded he has an ability to pay a fine, but his income is extremely limited and he is *broke*. Restitution is not applicable in the instant case.

As stated previously, Pursuant to 21 U.S.C. § 862(a)(1)(B), Defendant Onaro is ineligible for all Federal benefits at the court's discretion.

## CONCLUSION

Onaro's sentencing guideline range is 30–37 months. The sentencing guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 259 (2005). Though the sentencing judge must begin his sentencing analysis by correctly calculating and considering the advisory sentencing guidelines, he must not end his analysis after having done so. *Rita v. United States*, 551 U.S. 338, 351 (2007). The advisory sentencing guidelines are but one of seven sentencing factors. In *Gall v. United States*, the Court emphasized the sentencing judge's duty to thoughtfully evaluate all the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence for a defendant. 552 U.S. 38, 49-50 (2007).  Rather than presuming that the advisory sentencing guidelines will result in a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing, the sentencing judge must conduct an "individualized assessment" of the case by considering "all of the 3553(a) factors." *Gall*, 552 U.S. at 4950.

After having conducted his individual assessment, the sentencing judge may properly conclude that a sentence outside the advisory sentencing guidelines range is appropriate because the instant case falls outside the "heartland" of cases to which the Sentencing Commission intends the advisory sentencing guidelines to apply, because the advisory sentencing guidelines fail properly to reflect § 3553(a) considerations, or **because the case warrants a different sentence regardless.** *Rita*, 551 U.S. at 351. Throughout his analysis, the sentencing judge must not presume that a sentence within the advisory sentencing guidelines range should apply. *Nelson v. United States*, 555 U.S. 350, 352 (2009).

Due to peculiarities of poor federal legislation, Dr. Onaro legally prescribed medicine to his patients in line with his medical opinion. However, Dr. Onaro is now a felon under the Federal Drug Trafficking Statute. The sentencing guidelines clearly do not apply to Dr. Onaro. The instant case falls directly outside the "heartland" of cases the Commission attempts to address in the aggregate. Dr. Onaro is not a drug dealer.

Moreover, Onaro's individual case falls outside the "heartland" of other cases involving doctors in that Onaro had no profit motive, did not cause death or bodily injury, and did not knowingly prescribe to an addict or cause one to become an addict. He simply prescribed *a bit too much* pain-relieving medicine for the DOJ's taste. That does not warrant one day in federal penitentiary for a seventy year old law-abiding citizen, let alone thirty to thirty-seven months.

WHEREFORE, for the reasons set forth above, Defendant Onaro requests a downward variance to a range of zero days incarcerated, and other relief the court deems appropriate.

s/ Zachary Enlow
Zachary Enlow, OBA #34144
26226 E. 21st St. Ste 102.
Tulsa, OK, 74114.
zach@enlow.law
918.583.8205.